1  Daniel Robert Bartley, SBN 79586
2  Daniel Robert Bartley Law Offices
   Mail:  P.O.  Box 686, Novato, CA 94948-0686
3  St:  7665 Redwood Bvd, Ste 200, Novato, CA 94945-1405
   Tel 415 898 4741 • Fax 415 898 4841
4  E-mail danielbartleylaw@aol.com

5
   Attorney for Plaintiff Larry Luchetti
6

7

8                    UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF CALIFORNIA
9

10  LARRY LUCHETTI,                    |  Case No. CV 08 1629 SI

11                                     |
              Plaintiff,               |  **REPLY POINTS AND AUTHORITIES IN**
12  v.                                 |  **SUPPORT OF PLAINTIFF LARRY**
                                       |  **LUCHETTI'S MOTION TO REMAND TO**
13                                     |  **STATE COURT**
    THE HERSHEY COMPANY, a             |
14  Delaware corporation, and DOES 1   |
    through 100, inclusive,            |
15                                     |  Judge:  Hon. Susan Illston, U.S. District Judge
                                       |  Date:    Friday, June 6, 2008
16            Defendants.              |  Time:    9:00 A.M.
                                       |  Ctrm:   SF Courtroom 10, 19th Floor
17                                     |
18                                     |
19                                     |
20                                     |
21                                     |
22                                     |
23                                     |
24                                     |
25                                     |
26                                     |
27                                     |
28  _____   |

Reply P&A in Support of Motion to Remand - *Luchetti v. The Hershey Company and Does 1-100*

# TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.     Removal Statutes Are to Be Strictly Construed Against Removal and All Doubts
       Resolved in Favor of Remand . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    Statutory Provisions Regarding Service of Process must Be Liberally Construed to
       Effectuate Service If, as Here, *Actual Notice* Has Been Received by the Defendant . . . . 1

III.   Defendant Foreign Corporation's General Counsel Caused it to Appear That His
       Labor Counsel Was Authorized to Accept Service on His Behalf . . . . . . . . . . . . . . . . . 2

IV.    This Case Is Distinguishable from Case Law Cited by Defendant, Because Here
       Plaintiff's Counsel in the First Place Initiated the Line of Communication Regarding
       the Pursuit of Plaintiff's Claims with Fully *Four* Company Officers Unquestionably
       Authorized to Accept Service under California Code of Civil Procedure Section
       416.10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

V.     Due to Uncertainty Presented by Defendants' Declarations, the Court May Find
       It Was Defendant Hershey's Labor Counsel Who Delegated to Defendant's Outside
       Counsel Authority to Accept Service on Behalf of Defendant . . . . . . . . . . . . . . . . . . . 5

VI.    California Courts Recognize the Concept of Delegation of Authority to Accept
       Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

VII.   Defendant's Suggestion That Plaintiff's Service of Summons via Certified Mail
       Is Defective Because the Complaint Did Not Have a Proof of Service Attached Is
       Unsupported by Any Case Law and Is Directly at Odds with FRCP 4(l)(3) . . . . . . . . . 7

VIII.. No "State of Mind" Standard Applies for a Person Serving Process . . . . . . . . . . . . . . . 8

IX.    The *Dill* Case Relied upon by Defendant Is Distinguishable . . . . . . . . . . . . . . . . . . . 8

X.   Defendant's Having an In-state Designated Agent Did Not Render Defective
     Plaintiff's Service of Process by Certified Mail upon an Out-of-state Lawyer
     Who Had Ostensible Authority from the General Counsel . . . . . . . . . . . . . . . . . . . . . . 9

XI.  Defendant's Declarations in Opposition to Plaintiff's Motion to Remand Are
     Patently Deficient . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

XII. Defendant Was *Not* a Victim of Any Bad Faith Conduct . . . . . . . . . . . . . . . . . . . . . . 10

XIII. Defendant's Request That the Court, Pursuant to its Inherent Power, Assess
     Plaintiff and Plaintiff's Counsel  with Sanctions, Is Not Supported by the
     Evidence, Is Not Supported by the Law, and Is Hypocritical . . . . . . . . . . . . . . . . . . . 13

     A.   General Rules as to Sanctions Pursuant to Court's Inherent Power . . . . . . . . . 13

     B.   Defendant's Accusation of Deceit and Bad Faith by Plaintiff's Counsel Is
          Unsupported by the Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

     C.   Defendant's Demand for Imposition Sanctions Is Unwarranted . . . . . . . . . . . . 16

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

1

**TABLE OF AUTHORITIES**

2

**Federal Cases**

3

4

*Bachrach & Associates,* 903 F. 2d 709 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5

*Chambers v. NASCO, Inc.,* 111 S. Ct. 2123 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,18

6

*Cmiech v. Electrolux Home Products, Inc.,* 520 F. Supp. 2d 671 (M.D. Pa. 2007) . . . . . . . . . . 5

7

*Fristoe v. Reynolds Metals Co.,* 615 F. 2d 1209 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . 11

8

*Greene v. Lindsey,* 102 S. Ct. 1874 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

9

10

*Holmes v. PHI Service C.,* 437 F. Supp. 2d 110 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . 12

11

*Lofstrom v. Dennis* 829 F. Supp 1194(ND Cal 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

12

*Fink v. Gomez,* 239 F. 3d 989 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

13

14

*Kanter v. Warner-Lambert Co.,* 52 F. Supp. 2d 1126 (N.D. Cal. 1999) . . . . . . . . . . . . . . . . . . 1

15

*Lipsig v. National Student Marketing Corp.,* 663 F. 2d 178  (DC Cir. 1980) . . . . . . . . . . . . . . 18

16

*Nishimoto v. Federman-Sullivan v. First Affiliated Scurities, Inc.,* 813 F. 2d 1368 (1987)
        cert. den. 108 S. Ct. 150 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

17

*Petrie v. Pacific Stock Exchange, Inc.,* 982 F. Supp.1390 (ND Cal 1997) . . . . . . . . . . . . . . . . 1

18

19

*Pochiro v. Prudential Insurance,* 827 F. 2d 1246 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . 4

20

*Pumphrey v. K.W. Thompson Tool Co.,* 62 F.3d 1128 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . 18

21

*Reece v. Wal-Mart Stores, Inc.,* 98 F.3d 839 (7th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

22

*Staples v. Joseph Morton Co.,* 444 F. Supp. 1312 (ED NY 1978) . . . . . . . . . . . . . . . . . . . . . 10-11

23

*Transport Indemnity Co. v. United States*, 339 F. Supp. 405 (CD Cal 1972) . . . . . . . . . . . . . . 11

24

*Tulsa Professional Collection Services, Inc. v. Pope,* 108 S. Ct. 1340 (1988) . . . . . . . . . . . . . 10

25

26

27

28

**State of California Cases**

*Cruz v. Fagor America, Inc.*, 146 Cal. App. 4th 488 (2007), rev. den. (2007 Cal)
     2007 Cal LEXIS 3617 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Dill v. Berquist Construction Co.*, 24 Cal. App. 4th 1426, reh. den.
     (1994, Cal. App 4th Dist) 1994 Cal App LEXIS 512,  rev. den. (1994, Cal)
     1994 Cal LEXIS 4600 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,8,9,19

*Lowenstein (M.) & Sons v. Superior Court,* 80 Cal. App. 3d 762 (1978) . . . . . . . . . . . . . . . . . 9

*Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc*, 119 S. Ct. 1322 (1999) . . . . . . . . . . . . 15

*Nedeau v. Foster,* 129 Cal. App.3d 234 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,10

*Pasadena Medi-Center Associates v. Sup. Ct. (Houts),* 9 Cal. 3d 773 (1973) . . . . . . . . . . . 3,5

*Summers v. McClanahan*, 140 Cal. App. 4th 403 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 2,19

*Warner Bros. Records, Inc. v. Golden West Music Sales*, 36 Cal. App. 3d 1012 (1974) . . . . 3,12


**Federal Statutes and Rules**

28 U.S.C. § 1441 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1446(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

28 U.S.C. § 1446(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12,13,20

28 U.S.C. § 1447(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ. Proc. Rule 4(l)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed. R. Civ. Proc. Rule 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13


**State of California Statutes and Rules**

Civ. Code § 2317 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Code Civ. P. § 415.30 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Code Civ. P. § 415.40 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Code Civ. P. § 416.10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Code Civ. P. § 416.90 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,3

**Other Authorities**

Schwartzer, Tashima & Wagstaffe, Cal.Prac.Guide: Fed. Civ. Pro. Before Trial (The Rutter
        Group 2008), ¶17:715 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Weil & Brown, Cal Prac. Guide:  Civ. Proc. Before Trial (The Rutter Group 2007),  ¶ 4:3 . . . . . 6

1
2

**I.      REMOVAL STATUTES ARE TO BE STRICTLY CONSTRUED AGAINST REMOVAL AND ALL DOUBTS RESOLVED IN FAVOR OF REMAND.**

3

4      In opposing a motion to remand, the defendant carries the burden of establishing, by a

5  preponderance of the evidence, that removal was proper; there is a *strong* presumption against

6  removal jurisdiction, and any uncertainties are to be resolved in favor of remand.  28 U.S.C. §

7  1447(c); *Kanter v. Warner-Lambert Co.,* 52 F. Supp.2d 1126 (N.D. Cal. 1999); *Sullivan v. First*

8  *Affiliated Scurities, Inc.,* 813 F. 2d 1368 (1987) *cert den* 108 S.Ct. 150 ("removal statute is not to

9  be manipulated to promote policies beyond its scope").  The removal statute is strictly construed,

10  and the court must reject federal jurisdiction if there is *any* doubt as to whether removal was

11  proper.  28 U.S.C. § 1441; *Petrie v. Pacific Stock Exchange, Inc.,* 982 F. Supp. 1390 (N.D. Cal.

12  1997); *Nishimoto v. Federman-Bachrach & Associates,* 903 F. 2d 709 (9th Cir. 1990).

13
14

**II.     STATUTORY PROVISIONS REGARDING SERVICE OF PROCESS MUST BE LIBERALLY CONSTRUED TO EFFECTUATE SERVICE IF, AS HERE, *ACTUAL NOTICE* HAS BEEN RECEIVED BY THE DEFENDANT.**

15

16      In California, the statutory provisions regarding service of process are supposed to be

17  liberally construed to effectuate service if *actual notice* has been received by the defendant.

18  Thus, *substantial compliance is sufficient*.  When, as here, the defendant is a foreign corporation

19  and the person to be served must be one of the individuals specified in Code Civ. P. § 416.10

20  (service on corporation), substantial compliance with that statute may be found if, *despite* the

21  failure to address the mail to one of the persons to be served on behalf of the corporate defendant,

22  the summons ultimately was *actually received* by one of the persons to be served.  *Dill v.*

23  *Berquist Construction Co.,* 24 Cal. App. 4th 1426 (1994) reh. den. (1994, Cal. App., 4th Dist)

24  1994 Cal App LEXIS 512, rev. den. (1994, Cal) 1994 Cal LEXIS 4600.

25      The Court may take judicial notice that one of the usual functions of a general counsel of

26  a corporate law department is to receive regular – if not *daily* – reports from his subordinates of

27  all new litigation against the company.  (Bartley Decl. in Opp. to Motion for Sanctions, ¶ 5.)

28  Notably, the three attorney declarations filed by Defendant foreign corporation in opposition to

the motion to remand *make no claim that General Counsel Snyder did not actually receive the summons*. If Defendant foreign corporation, at the June 9 hearing, maintains to the Court that General Counsel Snyder *did not* receive actual notice of the summons, via his designated agent Labor Counsel Scalia in such General Counsel's place and stead, then Plaintiff requests leave to conduct discovery on such issue.

**III.    DEFENDANT FOREIGN CORPORATION'S GENERAL COUNSEL CAUSED IT TO APPEAR THAT HIS LABOR COUNSEL WAS AUTHORIZED TO ACCEPT SERVICE ON HIS BEHALF.**

In this case, Plaintiff's counsel opened communications with Defendant via a letter addressed to Burton Snyder, Defendant's Senior Vice President, General Counsel, and Secretary and fully three other vice presidents. Mr. Snyder, rather than respond to the letter himself, *delegated* to his Labor Counsel, Christopher Scalia, Mr. Snyder's authority to respond to such letter and – *more than that* – to receive, without limitation, *all* further correspondence and "additional information you would like Hershey to consider" regarding the case.

A person may be served by delivering the summons and complaint to someone authorized to accept service on his or her behalf. Code Civ. P. § 416.90 (governing service on persons other than persons listed in Code Civ. P. § 416.10). Such authority may be *actual* or *implied* (ostensible), as where the person to be served causes it to *appear* that another has been authorized to accept service on his or her behalf.

"Ostensible authority" is defined as "Such [authority] as a principal intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess." Civ. Code § 2317. See *Summers v. McClanahan,* 140 Cal. App. 4th 403, 411 (2006) (determination as to whether the officer has given such ostensible authority to another to serve as his agent entails weighing: (a) whether the officer had engaged in conduct that appeared to authorize the individual to be his agent to receive service, (b) the frequency of communication between the officer and the other person; and (c) whether there was a close business relationship between the

officer and the other person, making it likely that the person with ostensible authority receiving

the summons likely would inform his principal.  See also *Pasadena Medi-Center Associates v.*

*Sup. Ct. (Houts),* 9 Cal. 3d 773, 777 (1973) (where a corporation *held out* a non-officer as one of

its principal officers, that person may be held to have *ostensible* authority to receive service of

summons on the corporation's behalf, even if such person actually held no office at the time).

See also *Warner Bros. Records, Inc. v. Golden West Music Sales,* 36 Cal. App. 3d 1012,

1018 (1974) (held inapplicable the general rule that an attorney may not be served on behalf of a

client, where the facts established that such attorney had been delegated actual or ostensible

authority under § 416.90:  "The essential factor here is that [the attorney's] relationship with the

[person to be served] may have been sufficiently close and enduring to make it reasonably certain

that they would be apprised of the service on [the attorney' upon their behalf.")

Where there is a "close" and "enduring" relationship between the person receiving service

and the person on whose behalf he receives such service, the recipient "could be" found to have

*ostensible authority* to receive service of process.  *Id.,* 36 Cal. App. 3d at 1018.

The Court may take judicial notice of the fact that the relationship between a general

counsel and the labor counsel at a corporate headquarters law department clearly meets that

"close and enduring relationship" test:  Mr. Scalia's October 30, 2007, reply letter (Bartley Decl.

In Opp. to Motion for Sanctions, ¶ 3, Exh. B) reflects Mr. Scalia had been authorized by his boss,

the General Counsel Burton Snyder, to answer Plaintiff's counsel's letter to Mr. Snyder, et al.,

and to receive all subsequent communications, in the place and stead of Mr. Snyder and the three

other officers.  In his October 30, 2007, letter, Mr. Scalia wrote: *"In the future, correspond only*

*with me."*  (Emphasis supplied.)  In such letter, Mr. Scalia also wrote *"Please contact me if you*

*have additional information you would like Hershey to consider."* (Emphasis supplied.)  In

addition, Mr. Snyder wrote:  "In my position as Senior Vice President, General Counsel, and

Secretary, my duties include oversight and responsibility for all of the in-house lawyers

1

2

employed by The Hershey Company, including Mr. Christopher M. Scalia, Labor Counsel for

The Hershey Company."  (Snyder Decl. in Opp. To Motion to Remand, ¶ 2.).

3

4

Consistent with the authorities set forth in Section I above, to the extent the Court may

5

6

determine there is any uncertainty as to whether General Counsel Snyder conveyed to Labor

Counsel Scalia ostensible authority to receive communications regarding service in Mr. Snyder's

7

place and stead, such uncertainty *must* be resolved in favor of Plaintiff Larry Luchetti.

8

9

10

11

**IV.    THIS CASE IS DISTINGUISHABLE FROM CASE LAW CITED BY
DEFENDANT, BECAUSE HERE PLAINTIFF'S COUNSEL IN THE FIRST
PLACE INITIATED THE LINE OF COMMUNICATION REGARDING THE
PURSUIT OF PLAINTIFF'S CLAIMS WITH FULLY *FOUR* COMPANY
OFFICERS UNQUESTIONABLY AUTHORIZED TO ACCEPT SERVICE
UNDER CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 416.10.**

12

Plaintiff's counsel initiated the subject line of communication by writing Plaintiff's

13

14

counsel's opening letter not to just *one* vice president, but *four* vice presidents  Without question,

each and every one of these individuals fell within the persons described by CCP § 416.10 as

15

acceptable addresses for a certified letter presenting the summons and complaint.

16

17

*Pochiro v. Prudential Insurance,* 827 F. 2d 1246, 1348-49 (9th Cir. 1987), relied upon by

18

Defendant, is distinguishable because here in Mr. Luchetti's case, Plaintiff's counsel's February

19

6, 2006, service letter was *the second in a series of two letters sent to Defendant* – the first of

20

which was expressly addressed to Burton Snyder, the Defendant foreign corporation's Senior

21

Vice President, General Counsel, and Secretary.  Mr. Snyder clearly was, and is, a person

22

authorized to receive service of process, as "person" is defined by CCP § 416.10.  Because the

23

second letter was sent to Labor Counsel Christopher Scalia *in direct reliance upon* Mr.Scalia's

24

25

unequivocal representation that *"all"* additional correspondence should be channeled solely

through Mr. Scalia, Plaintiff's counsel was led to believe that General Counsel Snyder had

26

delegated to Mr. Scalia ostensible authority to receive, *for, and in the place and stead of,* General

27

28

Counsel Snyder and the three other vice presidents, *all* correspondence *and* "additional

information you would like Hershey to consider" regarding Mr. Luchetti's case, *without*

1

2

*exception* – including, but not limited to, a certified letter sending the summons.  (Bartley Decl. in Opp. to Motion for Sanctions,  ¶ 5.)

3

4

5

6

7

8

The Court may take judicial notice of the close reporting relationship that exists between a corporate law department's general counsel and his labor counsel.  Because of that close reporting relationship, Plaintiff's counsel reasonably inferred that Labor Counsel Scalia had been delegated ostensible authority to accept, in Mr. Snyder's full place and stead, a certified letter serving the summons.  (Bartley Decl. in Opp. to Mot. for Sanctions,  ¶ 5.)

9

10

11

12

The rule remains that an agent acting within his ostensible authority binds his principal. See *Pasadena Medi-Center Associates, supra,* 9 Cal. 3d 773, at 781.  Labor Counsel Scalia, acting within his ostensible authority to communicate in the place and stead of his principal General Counsel Snyder, bound Mr. Snyder.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Defendant's reliance upon *Cmiech v. Electrolux Home Products, Inc.* (520 F. Supp.2d 671, (M.D. Pa. 2007), interpreting Pennsylvania law, is misplaced, because such case *did not* at all involve the plaintiff's invocation of any counterpart to Code Civ. P. § 415.40 (service of a foreign corporation via certified mail); instead, it addressed *solely* a Pennsylvania statute that was a counterpart to Code Civ. P. § 415.30 (service via a "notice and acknowledgment of receipt of summons" form).  At 673-676.  The issue in such case was whether defense counsel's behavior evidenced some intent to forego objection to the defective service, and a determining factor was that the plaintiff in that case had demonstrated lack of a good faith effort to take the necessary steps to effectuate service as required by the rules of court; instead, in that case, the plaintiff "sat idly by."  In the instant case, Mr. Luchetti *did not* sit on his rights after sending the "Notice and Acknowledgment of Receipt of Summons – Civil" form; rather, Mr. Luchetti, upon Mr. Scalia's receipt of the certified mail packet, had with due diligence successfully effected lawful service upon a person having ostensible authority, pursuant to Code Civ. P. § 415.40.

28

**V.    DUE TO UNCERTAINTY PRESENTED BY DEFENDANTS' DECLARATIONS, THE COURT MAY FIND IT WAS DEFENDANT HERSHEY'S LABOR**

**COUNSEL WHO DELEGATED TO DEFENDANT'S OUTSIDE COUNSEL AUTHORITY TO ACCEPT SERVICE ON BEHALF OF DEFENDANT.**

Both house counsel Scalia and outside counsel Miller, in their respective declarations, are *very* careful to declare to the Court *only* that it was "The Hershey Company"– *as opposed to Labor Counsel Mr. Scalia* – who delegated to outside counsel Miller Law Group the authority to accept service on behalf of The Hershey Company.  (See Miller Decl. ¶3, Scalia Decl. ¶9)

Since no house counsel other than Scalia is mentioned as having any direct contact with either Plaintiff's counsel *or* the Miller Law Group, and since the letter, e-mail, or other documentation from *"The Hershey Company"* delegating authority to the Miller Law Group to accept service of process is *conspicuously missing* from the documents filed by Defendant, the Court, deciding, as it must, every uncertainty in favor of Plaintiff, must find, from the totality of the evidence –  the e-mail chain, the letters, and the declarations – that it was *Labor Counsel Scalia* who delegated to outside counsel Miller Law Group such authority to accept process – *the same* Christopher Scalia who Defendant vehemently claims had no such authority.  *Labor Counsel Scalia's* delegation to outside counsel of authority to accept service of process is directly at odds with Defendant's representation to the Court that Mr. Scalia had no such authority.  For one to have successfully delegated authority, he must in the first place have had such authority.

If the Court has any hesitation about deciding this uncertainty in Plaintiff non-removing party's favor, Plaintiff implores the Court to invite Defendant to disclose to the Court, at the June 9 hearing, *precisely who* at Defendant delegated to outside counsel authority to accept service of process.  If, at the June 9 hearing, Defendant denies it was Labor Counsel Scalia who delegated to Miller Law Group authority to accept service of process, Plaintiff asks that he be permitted to conduct discovery on this issue, given that any privilege that existed as to the author of such communication has been waived by Defendant's contention that Mr. Scalia had *no* such authority, and given that privileged content beyond the delegation may be redacted.

If one represents a defendant, and is asked to accept service on behalf of the defendant, it

is considered good practice to make sure one has such client's authority, *in writing,* before agreeing to anything.  *See* Weil & Brown, Cal Prac. Guide:  Civ. Proc. Before Trial (The Rutter Group 2007),  ¶ 4:3.  Accordingly, the Court may reasonably infer that there exists a writing or e-mail whereby Mr. Scalia expressly delegated to the Miller Law Group authority to accept service.  At a minimum, the Court should review *in camera* such writing or e-mail, with privileged data redacted, to resolve any uncertainty as to whether it was Labor Counsel Scalia who delegated to outside counsel Miller Law Group authority to accept service of process – the same authority *that had to have been delegated to Mr. Scalia by his boss the General Counsel*.

## VI.     CALIFORNIA COURTS RECOGNIZE THE CONCEPT OF DELEGATION OF AUTHORITY TO ACCEPT SERVICE.

In applying Code Civ. P. 415.40, California courts have recognized the concept of delegation of authority to accept service.  For example, in a case where the person qualified to receive service by mail under Code Civ. P. § 416.10 has delegated to a non-qualified person authority to sign for and accept mail addressed to such qualified person, the statutory scheme permits completion of service by mail when the return receipt is signed by such person whom the defendant has delegated such authority, as opposed to signed by the qualified person himself. *Nedeau v. Foster,* 129 Cal. App.3d 234 (1982).  See also *Cruz v. Fagor America, Inc.,* 146 Cal. App. 4th 488 (2007), rev. den. (2007 Cal) 2007 Cal LEXIS 3617.

## VII.    DEFENDANT'S SUGGESTION THAT PLAINTIFF'S SERVICE OF SUMMONS VIA CERTIFIED MAIL IS DEFECTIVE BECAUSE THE COMPLAINT DID NOT HAVE A PROOF OF SERVICE ATTACHED IS UNSUPPORTED BY ANY CASE LAW AND IS DIRECTLY AT ODDS WITH FRCP 4(l)(3).

Defendant fails to cite *any* case law or rule supporting Defendant's implication that absence of a proof of service by certified mail at the end of the Complaint rendered such service fatally defective.  Further, Fed. R. Civ. Proc. 4(l)(3) ("Validity of Service; Amending Proof") provides: "Failure to prove service does not affect the validity of service. The court may permit proof of service to be amended."  Plaintiff may file, after the fact, a proof of service to reflect

service by mail, and indeed has now done so.  (See "Plaintiff's Proof of Service by Certified Mail" filed herewith, on May 23, 2008.)

## VIII.   NO "STATE OF MIND" STANDARD APPLIES FOR A PERSON SERVING PROCESS.

Defendant foreign corporation appears to argue that because Plaintiff's counsel sent Defendant, with the summons, a "Notice and Acknowledgment of Receipt of Summons – Civil" form required for Code Civ. P. § 415.30 service, and requested execution of such form, such effected an estoppel rendering defective the service by certified mail under Code Civ. P. § 415.40, which service by law was *not* conditioned upon execution of the "Notice and Acknow-ledgment of Receipt of Summons – Civil" form.

Such argument is frivolous.

By way of illustration, *under Defendant's rationale,* in a hypothetical case against a defendants Mr. Jones and Mr. Smith, if a process server *thinking* he had served defendant Mr. Jones instead *by mistake* served defendant Mr. Smith, such service upon Mr. Smith was defective, because the process server did not realize he had served Mr. Smith.

By way of further illustration, *under Defendant's rationale,* if a process server checked the wrong box at the bottom right of a summons, reflecting which statute under which service is effected, such would  invalidate the service.

## IX.    THE *DILL* CASE RELIED UPON BY DEFENDANT IS DISTINGUISHABLE.

Defendant's reliance upon *Dill v. Berquist Construction Co.*, 24 Cal. App. 4th 1426 (1994) is misplaced.  The *Dill* case *did not* entail a Code Civ. P. § 416.10-type high-level corporate officer having delegated to a non-officer the exclusive authority to receive and respond to communications about the matter in dispute.  Quite to the contrary, the *Dill* case was a case in which the plaintiff obtained a default judgment based upon a service letter addressed to *the corporate defendant in general*, without identifying as any particular person as an addressee, and such certified letter being signed for by an individual who was not identified by plaintiff as

authorized to speak in the place and stead of a person who could be served pursuant to Code Civ. P. § 416.10.  *Id.* at 1436-39.

In Plaintiff Larry Luchetti's case, on the other hand, Plaintiff's counsel expressly opened the dialogue via initial correspondence addressed to fully four high-level officers of the Defendant foreign corporation: Burton H. Snyder, Esq. (Defendant's Senior Vice President, General Counsel, and Secretary) and three other high-level vice presidents.  The Court may draw a reasonable inference from Mr. Scalia's October 30, 2007, reply letter on those four officers' behalf (Bartley Decl. in Support of Motion to Remand,  ¶3, Exh. B) that General Counsel Snyder and the three other officers delegated to Mr. Snyder's subordinate, Labor Counsel Scalia, without qualification, authority to accept *all* subsequent correspondence regarding Mr. Luchetti's claims that otherwise would be directed by Plaintiff's counsel to General Counsel Snyder or one of the other three high-level officers.  Under these circumstances, Defendant's attempt to equate its Labor Counsel Christopher Scalia to the mail room minion in *Dill* falls flat.

## X.     DEFENDANT'S HAVING AN IN-STATE DESIGNATED AGENT DID NOT RENDER DEFECTIVE PLAINTIFF'S SERVICE OF PROCESS BY CERTIFIED MAIL UPON AN OUT-OF-STATE LAWYER WHO HAD OSTENSIBLE AUTHORITY FROM THE GENERAL COUNSEL.

The fact that Defendant, a foreign corporation, had a designated agent for service within the state of California did not make inappropriate service by mail pursuant to Code Civ. Proc. § 415.40, where such service provided the corporation with actual notice and an opportunity to be heard.  Although service of process could properly be made on Defendant foreign corporation's designated agent within the state by any of the methods prescribed for service within the state, the agent was not the only person on whom service could be made, and service could properly be made by mail pursuant to Code Civ. Proc. § 415.40, which expressly provides for service by mailing a copy of the summons and complaint.  See *Lowenstein (M.) & Sons v. Superior Court,* 80 Cal. App. 3d 762 (1978).  The Constitution does not require personal service of summons in every case; nor does it require, as a substitute for personal service, the method which is "most

likely" to reach the defendant; all that is required is a method reasonably likely to provide notice.

See *Greene v. Lindsey,* 102 S. Ct. 1874, 1881 (1982). Where a defendant's name and address are

reasonably ascertainable, "notice by mail or other means as certain to ensure actual notice" is the

minimum the Constitution requires. *Tulsa Professional Collection Services, Inc. v. Pope,* 108 S.

Ct. 1340, 1347-1348 (1988).

## XI.    DEFENDANT'S DECLARATIONS IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND ARE PATENTLY DEFICIENT.

Defendant foreign corporation's opposition declarations are patently deficient, because

they *fail to deny* that:  (1) Senior Vice President, General Counsel, and Secretary Snyder *actually*

*received* the summons and complaint; (2) Mr. Snyder had *actual notice* of the litigation; (3) Mr.

Snyder *delegated to his subordinate, Labor Counsel Christopher Scalia, unfettered authority* to

receive all correspondence about Mr. Luchetti's case in Mr. Snyder's place and stead; and (4)

Labor Counsel Scalia delegated to outside counsel Miller Law Group authority to accept service.

Further, it simply is not enough for the Defendant foreign corporation to *argue* a lack of

authority by Mr. Scalia – it was incumbent upon Defendant to submit declarations negating the

appearance of *ostensible* authority.  For example:  There is no declaration establishing that

*General Counsel Snyder* – as opposed to Labor Counsel Scalia – was the person who delegated

to outside counsel Miller Law Group authority to accept service of process.  And there is no

declaration and supporting documentation reflecting that Mr. Snyder had no authority to delegate

*all* of Mr. Snyder's communication responsibilities in this matter to his department's Labor

Counsel, Mr. Scalia.  "Defendant, having the clear opportunity to refute what otherwise appears

to e competent evidence that [defendant] was served with process, has failed to do so." *Nedeau,*

*supra,* 129 Cal. App. 3d at 237.

## XII.    DEFENDANT WAS *NOT* A VICTIM OF ANY BAD FAITH CONDUCT.

Defendant's reliance upon an out-of-circuit district court case, *Staples v. Joseph Morton*

*Co.,* 444 F. Supp. 1312, 1314 (E.D. N.Y. 1978) is misplaced, because the plaintiff in *Staples* had

1    made a statement he was dismissing the state action, and then, such plaintiff egregiously reneged

2    on such representation.  No false representation of dismissal – or even *anything close* to such an

3    egregiously false representation – was made by Plaintiff Larry Luchetti's counsel in this case.

4    Undersigned Plaintiff's counsel engaged in *no* misrepresentation to defense counsel that Plaintiff

5    had waived service pursuant to Code Civ. P. § 415.40.

6
7          Defendant's reliance upon *Transport Indemnity Co. v. United States*, 339 F. Supp. 405,

8    417 [s.i.c. - no such page in the case] (C.D. Cal. 1972) is misplaced, because that case entailed

9    invocation of the doctrine of estoppel *against the defendant* rather than *against the plaintiff*:

10            ". . . In the instant case, the two Defendants are not independent of each other.  To
              the contrary, they are closely related, being a parent corporation and its wholly-
11            owned subsidiary, represented by the same counsel.  On these facts, the doctrine
              of estoppel could and should be invoked against Defendants.  The two corpora-
12            tions are in privity.  When Defendant One failed to seek removal within the time
              limit, not only did it become barred from removing the case at a later time, but
13            Defendant Two is similarly barred as being in privity with it."

14
15    *Id.,* 339 F. Supp. at 409.

16          Accordingly, if anything, *Transport Indemnity* supports invocation of the doctrine of

17    estoppel *against Defendant Hershey,* over its insistence that all future communications to the

18    General Counsel and the three other officers (all qualified to receive service by certified mail

19    under Code Civ. P. § 416.10) be channeled solely through Labor Counsel Scalia.  A defendant

20    who makes such a demand, limiting plaintiff's counsel's direct line of communication with the

21    officers, *should* be estopped from later trying to take advantage of plaintiff's counsel's respect

22    for, and compliance with, such demand.

23
24          Defendant's reliance upon *Fristoe v. Reynolds Metals Co.,* 615 F. 2d 1209 (9th Cir. 1980)

25    is totally unjustified, because the facts justifying estoppel in such case had absolutely no similar-

26    ity to the facts in this case.  Specifically, the plaintiff in such case was held to have waived his

27    objection to the defendant having filed its petition for removal one day late, where the plaintiff

28    objected only after his appeal was taken *after trial on the merits.*  At 1212-13.  Such facts justi-

fying invocation of estoppel bear absolutely no comparison to the facts in this case, where there is no issue as to the timing of Plaintiff's objection to Defendant's late removal.

Defendant's reliance upon *Holmes v. PHI Service C.,* 437 F. Supp.2d 110, 115-17 (D.D.C. 2006) also is misplaced, given there was no representation by the law department in such case that the Associate General Counsel had been delegated authority to act in the place and stead of the General Counsel. Unlike the case at bar, the *Holmes* case entailed *no* facts suggesting the Associate General Counsel had ostensible authority, and in fact entailed an *admission* by the plaintiff that he had "erroneously identified Jill Flack, Esq., as the resident agent" authorized by the defendant to receive service on its behalf. At 116. Such District of Columbia decision did not entail application of the "close and enduring relationship" analysis required by California case law. See *Warner Bros. Records, Inc., supra,* 36 Cal. App. 3d at 1018.

See also *Reece v. Wal-Mart Stores, Inc.,* 98 F.3d 839, 843-44 (7th Cir. 1994) (where a plaintiff used a sensible way to notify a responsible individual within the corporation, for purposes of triggering the removal period, the corporate defendant received notice of lawsuit on date its CEO signed receipt for letter sent by plaintiff's attorney enclosing file-stamped copy of initial pleading, notwithstanding that CEO was not, under Texas state law, authorized to receive service on behalf of corporation). In *Reece,* the 7th Circuit held "the vagaries of state law regarding which corporate officers are subject to service bear no relation to the notice concerns underlying § 1446(b)":

> "Reece's attorney sent the pleading to WalMart's CEO – a person whom she reasonably could assume to be responsible and sufficiently familiar with legal matters to forward the pleading to the proper individual or department within the company – and received a return receipt. As this method of delivery is a perfectly sensible way to notify a responsible individual within the corporation, we conclude that Wal-mart "received" a copy of Reece's initial pleading on the date that its representative signed for the letter"

At 844.

\\\

1

2

3

4

5

6

7

In circumstances where an attorney has been authorized to represent the client on the day he receives the initial pleadings, the 30-day removal period commenced to run upon the day such attorney received the initial pleadings, rather than when the service on the client was formally accomplished.  28 U.S.C. § 1446(b).  *Lofstrom v. Dennis* 829 F.Supp 1194, 1196-98 (ND Cal 1993) (finding that "attorney had represented client in the past and was authorized to receive service on the date he received authorization to represent her").

8

9

10

**XIII.   DEFENDANT'S REQUEST THAT THE COURT, PURSUANT TO ITS INHERENT POWER, ASSESS PLAINTIFF AND PLAINTIFF'S COUNSEL WITH SANCTIONS, IS NOT SUPPORTED BY THE EVIDENCE, IS NOT SUPPORTED BY THE LAW, AND IS HYPOCRITICAL.**

11

**A.     General Rules as to Sanctions Pursuant to Court's Inherent Power.**

12

13

14

15

16

Federal courts have inherent power to impose sanctions against attorneys and parties for "bad faith" conduct in litigation or for "willful disobedience" of a court order.  *Chambers v. NASCO, Inc.,* 111 S. Ct. 2123, 2132 (1991).  Before a court may impose sanctions against a lawyer or party under its inherent power, it must find that the lawyer or party "acted in bad faith, vexatiously, wantonly or for oppressive reasons."  *Id.,* at 2123.

17

18

19

20

21

22

Recklessness by itself does *not* justify sanctions under the court's inherent power to award sanctions for bad faith conduct; however, reckless *in combination* with other factors may make such sanctions appropriate: "[S]anctions are available for a variety of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose."  *Fink v. Gomez* (9th Cir. 2001) 239 F.3d 989, 994.

23

24

25

26

Conduct that withstands the scrutiny of Rule 11 cannot be punished under the court's inherent power: By definition, conduct found to be "warranted in fact and law and not presented for an improper purpose" cannot constituted "bad faith."  Schwartzer, Tashima & Wagstaffe, Cal.Prac.Guide: Fed. Civ. Pro. Before Trial (The Rutter Group 2008), ¶17:715.

27

28

**B.     Defendant's Accusation of Deceit and Bad Faith by Plaintiff's Counsel Is Unsupported by the Evidence.**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Notwithstanding the Defendant's vitriolic use of pejorative terms such as "trickery," "bait and switch," and "bad faith," there was no skullduggery on the part of Plaintiff's counsel incident to service of process upon Defendant.  Quite to the contrary, the e-mail chain and correspondence filed by both sides clearly reveal that Plaintiff's counsel, at the time of service, *simply was uncertain* whether the certified mail was enough.  Plaintiff's counsel, while *hoping* the certified mail packet would constitute service (Bartley Decl. in Sup. Mot. to Remand, ¶ 5: "I intended such certified correspondence to constitute service of process via certified mail under California law"), was uncertain enough about what was lawful service to *back up* the certified mail return receipt with a Code Civ. P. § 415.30 "Notice and Acknowledgment of Receipt of Summons – Civil" form.  (Bartley Decl. in Opp. to Motion for Sanctions, ¶¶ 2,3.)

Defendant fails to cite *any* case law in support of Defendant's implication that it is the responsibility of a plaintiff's lawyer to advise defense counsel for an out-of-state defendant that certified mail, under Code Civ. P. § 416.40, is service upon such defendant, *with or without* the return receipt required to effectuate service under Code Civ. P. § 416.30.  Even if Plaintiff's counsel's had known with certainty that Code Civ. P. § 415.40 made service of process effective 30 days after the out-of-state defendant's receipt of the certified mail, regardless whether the Code Civ. P. § 415.30 "Notice and Acknowledgment of Receipt of Summons – Civil" was signed and returned, it was not Plaintiff's counsel's duty to advise Defendant's counsel on California law on use of certified mail to serve process upon a foreign corporation.

 There is *no* requirement that a plaintiff's counsel educate a foreign defendant's learned house counsel and its learned California defense counsel on applicable California law regarding service of a foreign corporation via certified mail.  Defendant's lawyers were reckless to ignore Code Civ. P. § 415.40 and instead rely solely upon Plaintiff's counsel's inclusion of the "Notice and Acknowledgment of Receipt of Summons – Civil" form required to perfect service pursuant to Code Civ. P. § 415.30.  It absolutely was incumbent upon such defense counsel to recognize that lawful service occurred on the date General Counsel Snyder's ostensible agent, Labor Counsel

Scalia, received the certified mail, regardless whether the Defendant foreign corporation subse-

quently would ever sign and return the form.

Plaintiff's counsel owed *no* duty to educate the Defendant, *especially* where, as here, the

individual being served was not a lay person, but an in-house lawyer representing himself as

standing in the place and stead of the company's General Counsel and three vice presidents, and

where such in-house lawyer without delay had retained learned California litigation defense

counsel.  It was the responsibility of the Defendant foreign corporation, blessed with learned

house counsel and learned litigation defense counsel, to do *its own* legal research and due

diligence.  Defendant's failure to do so is not the fault of Plaintiff's counsel.  If, in the experience

of Defendant's house counsel and California defense counsel, they had *the slightest inkling* that

the return of the "Notice and Acknowledgment of Receipt of Summons – Civil" form was not

necessary to perfect service by certified mail upon a foreign corporation, it was nothing short of

negligence for such counsel to permit the 30 days to expire without filing the notice of removal.

It was only *after* Defendant effected removal that Plaintiff's counsel conducted legal

research confirming to Plaintiff's counsel that, under Code Civ. P. § 415.40, the date of

Defendant's receipt of the certified letter containing the summons – rather than the date of

Defendant's outside counsel's execution of the Code Civ. P. § 415.30 form – was the date that

started the running of the 30 days for removal.  (Bartley Decl. in Opp. to Mot. for Sanctions, ¶

2,3.)

To put in perspective Defendant's disappointing accusations of deceit by Plaintiff's

counsel, it is helpful to recall the days years ago, prior to *Murphy Brothers, Inc. v. Michetti Pipe*

*Stringing, Inc*, 119 S. Ct. 1322 (1999), when the mere receipt of a "courtesy copy" of a complaint

by a defendant or its counsel was deemed to trigger the running of the 30 days for removal.

Under the rationale Defendant Hershey now implores the Court to adopt, a plaintiff's lawyer's

pre-*Murphy* service of such a "courtesy copy" in those days would have constituted sanctionable

"trickery," "bait and switch," and "bad faith" meriting sanctions.  Yet, to Plaintiff's counsel's

knowledge, no court in those days ever held that a plaintiff's counsel serving a courtesy copy was under any duty to educate the defendant that its 30 days to remove had begun running by virtue of such service, and no court condemned the plaintiff's counsel for such practice. In those days, many a defendant and defense counsel who did not do their research and due diligence, and consequently complacently sat on their rights for 30 days after receipt of such "courtesy copy" lost the right to remove to federal court. *Notwithstanding* that the courtesy copies sent by plaintiffs' counsel in those days were often sent with the *deliberate* intention of starting the running of the defendant's 30 days to remove, the plaintiffs' counsel were not engaging in bad faith by sending such "courtesy copies" for the purpose of starting the clock running on the defendant's 30 days to remove, and such plaintiff's counsel certainly were never sanctioned for having used a courtesy copy to out-fox the defendant. In instances in which a defendant in those days was duped by service of such a courtesy copy, defense counsel usually recognized he or she simply had been caught asleep at the wheel and then faced the consequential remand – without pointing the finger of blame at plaintiff's counsel.

Seeing Plaintiff's counsel's use of, and reference to, the "Notice and Acknowledgment of Receipt of Summons – Civil" form, Defendant elected, totally on its own volition, to ignore Code Civ. P. § 415.40. Rather than admit it dropped the ball, Defendant instead resorts to vilifying Plaintiff's counsel. Absent credible evidence of intentional deception by Plaintiff's counsel, *of which there is absolutely none,* Defendant's failure to consider the application of Code Civ. P. § 415.40 was a calculated risk taken by Defendant. It is unfair and unreasonable to permit Defendant to avoid the consequences of its own error in judgment.

### C.  Defendant's Demand for Imposition Sanctions Is Unwarranted.

Under the totality of circumstances, Defendant's demand for sanctions is without merit, represents an attempted end run around the safe harbor protections afforded by Fed. R.Civ. P. 11, and is shamefully hypocritical.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Several specific factors reflect that the Defendant's demand for sanctions is not justified:

• The facts in Mr. Luchetti's case, entailing a corporate general counsel's delegation of total communication authority to one of his subordinate lawyers in his law department, appears to be a case of first impression.  Plaintiff's counsel has searched diligently for any cases having such set of facts, but has been unable to find any.

• Plaintiff's counsel, incident to Plaintiff's counsel's initial April 2, 2008, meet-and-confer e-mail to Defendant's outside counsel, asserted as follows:

> The Hershey Company was served pursuant to Code Civ. P. § 415.40 on February 16, exactly ten (10) days after I mailed the certified letter to house counsel Scalia. Accordingly, the 30 days to remove expired on March 17.

> If you have contrary legal authority, please immediately apprise me – I learn something just about every day in this business. Otherwise, if you do not have contrary authority, Plaintiff Larry Luchetti respectfully asks The Hershey Company to stipulate to a remand without the necessity of Mr. Luchetti having to incur the costs and attorney fees that will be attendant to a motion to remand.

(Bartley Decl. in Support of Motion to Remand, ¶5, Exh. D.)

As of April 23, 2008, fully three (3) weeks later, with only a few days left for Plaintiff to file his motion to remand, Defendant's outside counsel had not produced *any* authority suggesting that in a situation where the Plaintiff's counsel had contacted the general counsel, secretary, and vice president of a defendant foreign corporation, such officer's directive mandating that continued correspondence be solely with his labor counsel would serve to insulate the General Counsel from service by mail via Code Civ. P. 415.40.  Accordingly, Plaintiff, because of the strict 30-day time limit for filing a motion to remand, on April 23 proceeded with the filing of his motion to remand.

• Plaintiff's counsel had a good faith belief that Defendant's General Counsel Snyder had delegated *all* responsibility for this case to his subordinate, Labor Counsel Christopher Scalia. (Bartley Decl. in Opp. to Motion for Sanctions,  ¶¶ 5,6.)

• Defendant, by accusing Plaintiff's counsel of bad faith conduct, is the pot calling the

1    kettle black.  The Court has grounds to determine that Defendant, by intentionally avoiding

2    disclosing to the Court precisely who at its Law Department delegated to outside counsel Miller

3    Law Group the authority to accept service of process, engaged in conduct that itself may be

4    sanctionable under the Court's inherent power.  See *Lipsig v. National Student Marketing Corp.*

5    663 F. 2d 178, 181 (DC Cir. 1980), (held where an attorney seriously misleads the court by

6    omitting material evidence, such is bad faith conduct, sanctionable under the court's inherent

7    power).  Sanctions under the Court's inherent power are *particularly appropriate* for fraud

8    practiced upon the court.  *Chambers, supra,* 111 S. Ct. At 2138, fn. 17.  "Fraud on the court"

9    occurs when an officer of the court perpetrates a fraud that affects the ability of the court or jury

10   to judge the case impartially.  It "must involve an unconscionable plan or scheme which is

11   designed to improperly influence the court in its decision." *Pumphrey v. K.W. Thompson Tool*

12   *Co.*, 62 F. 3d 1128, 1131 (9th Cir. 1995) (internal quotes omitted).  Further, 28 U.S.C. § 1446(a)

13   refers to Fed. R. Civ. P. 11 and may provide stiff sanctions for improper removal.

14          Notwithstanding the above, Plaintiff implores the Court *not* to impose sanctions upon

15   Defendant or its counsel for their conduct, because respective counsel need to attempt to get

16   along well with one another over the duration of this case, and sanctions do little to aid in such

17   effort.  *All Plaintiff asks is that the case be remanded.*

18                                **CONCLUSION**

19          The Defendant foreign corporation failed to give due consideration to the possible

20   consequences of service by certified mail.  In the exercise of reasonable diligence, Defendant

21   would have known, after receipt of the summons via certified mail, that there was a very

22   substantial chance that the clock was ticking on its 30-day deadline for removal.  Had Defendant

23   done even the most elementary legal research, Defendant would have seen the risk of application

24   of Code Civ. P. § 415.40.  Out of an abundance of caution, Defendant should have effected the

25   removal within 30 days of Defendant's receipt of the summons via certified mail.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The fact that the second letter from Plaintiff's counsel was a *certified* follow-up letter to a letter sent directly to the Defendant foreign corporation's Senior Vice President, General Counsel, and Secretary (plus three other vice presidents) should have been a *red flag* to Defendant, causing Defendant to research and double-check the law to ascertain whether certified mail *by itself* could possibly trigger the running of the 30 days for removal, and to research and uncover other applicable case law.

Defendant should have readily seen from the *Dill* case (which Defendant even cited in its brief), that California law recognizes the doctrine of "substantial compliance" in circumstances where the proper officer actually has received the summons.

Further, Defendant should readily have found *Summers*, requiring a weighing of the following three factors: (a) whether General Counsel Snyder had engaged in conduct that appeared to authorize his Labor Counsel Scalia to be his agent to receive service, (b) the frequency of communication between General Counsel Snyder and his Labor Counsel Scalia; and (c) whether there was a close business relationship between General Counsel Snyder and his labor Counsel Scalia, making it likely that Mr. Scalia would inform Mr. Snyder of receipt of the summons.

Given Defendant Hershey obviously had well-laid plans to remove this case to federal court, it was only prudent for Defendant to do precautionary elementary research on whether certified mail constitutes valid service, and on whether there existed factors establishing that Labor Counsel Scalia had *ostensible* authority to accept service.  Instead, Defendant gambled that Plaintiff's counsel would not realize that Mr. Scalia's receipt of service by certified mail started the clock ticking on the 30 days for removal.

While Plaintiff's counsel asked Defendant's counsel to sign the "Notice and Acknowledgment of Receipt of Summons – Civil" form "to accept service" (Bartley Decl. in Support of Motion to Remand, ¶ 4, Exh. C), it is a Grand Canyon-size leap to characterize such request as a bad faith representation by Plaintiff's counsel that service upon Defendant could be accomplished *only* via the Code Civ. P. § 415.30 signed acknowledgment process, or as a waiver of

service that had been effected pursuant to Code Civ. P. § 415.40.  It was simply reckless for Defendant to draw such inferences..

The oversight of Defendant's learned counsel, while unfortunate, is no excuse, should not be blamed upon Plaintiff's counsel, and should not serve to excuse Defendant from the 30-day limitation imposed by 28 U.S.C. § 1446(b).

Pursuant to the federal rule that every single inference must be drawn in favor of the non-removing party, and pursuant to the state rules relative to substantial compliance and ostensible authority, Defendant's removal of this case was untimely, and its demand for sanctions is hypocritical and without merit.  Plaintiff reiterates that this case should be remanded to the Alameda County Superior Court.


Dated: May 20, 2008                    Respectfully submitted,

                                       BARTLEY LAW OFFICES
                                       Attorneys for Plaintiff Larry Luchetti

                                       s/

                          By:          _____
                                       Daniel Robert Bartley

**PROOF OF SERVICE**

The undersigned declares he/she is employed in the county of Marin, State of California, by Daniel Robert Bartley Law Offices, P.O. Box 686, Novato, CA, 94948-0686.  I am over the age of 18 and not a party to this action.

On today's date, I served, via e-mail, a true and correct copy of **"REPLY POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF LARRY LUCHETTI'S MOTION TO REMAND TO STATE COURT**."

Such was served upon defense counsel as follows:

> Michele Ballard Miller, Esq.
> Miller Law Group
> 500 Sansome Street, Suite 400
> San Francisco, CA 94111
> Telephone 415 464-4300
> Fax 415 464-4336
> E-mail mbm@MillerLawGroup.com

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct and that this declaration was executed on this 23rd day of May, 2008, at Novato, Marin County, California.

s/

_____
Daniel Robert Bartley

Reply P&A in Support of Motion to Remand - *Luchetti v. The Hershey Company and Does 1-100*