1
2
3
4
5              IN THE UNITED STATES DISTRICT COURT
6            FOR THE NORTHERN DISTRICT OF CALIFORNIA
7
8    LARRY LUCHETTI,                          No. C 08-1629 SI
9              Plaintiff,                     **ORDER GRANTING DEFENDANT'S
                                              MOTION FOR SUMMARY JUDGMENT**
10      v.
11   THE HERSHEY COMPANY and DOES 1
     through 100, inclusive,
12
13             Defendants.
                                          /
14
15
16          On August 7, 2009, the Court held a hearing on defendant's motion for summary judgment.  For
17   the reasons set forth below, the Court GRANTS defendant's motion.
18
19                                  **BACKGROUND**
20          In 2005 defendant The Hershey Corporation ("Hershey") acquired two San Francisco Bay Area
     confection companies, Joseph Schmidt Confections, Inc. in San Francisco and Scharffen Berger
21   Chocolate Maker, Inc. in Berkeley.  In May 2006, Hershey hired plaintiff into the position of Production
22   Supervisor at the Joseph Schmidt plant.  Plaintiff was one of two Production Supervisors; plaintiff was
23   responsible for Joseph Schmidt's packaging lines and his counterpart was responsible for
24   manufacturing.  Plaintiff was responsible for implementing safety procedures on the packaging side of
25   the business, as well as overseeing the packaging process, supervising the employees who worked in
26   the packaging lines, ensuring that Hershey's "Good Manufacturing Practices" were implemented, and
27   making sure production was completed in a timely manner.
28

In October 2006, plaintiff was transferred to the Scharffen Berger factory to be the sole Production Supervisor at that facility.  According to an email sent by plaintiff's direct supervisor, Thomas Soles, to plaintiff, plaintiff's duties included, *inter alia*, "Learn in detail all Chocolate production operations and process flow"; "Take FULL responsibility for Floor operations, scheduling, communication, personnel, safety, and Sanitation"; "Establish floor level communications with operators on all shifts"; "Act as Lead for Plant Safety so moving forward we can establish programs and implement where necessary"; "Maintain productivity and eventually seek opportunities to improve output"; "Provide immediate floor support for Peter K. so he can re-focus on process and procurement". Soles Decl., Ex. A.[1]  The parties dispute the reason for plaintiff's transfer.  Defendant asserts that plaintiff's job performance was deficient in numerous respects, and that plaintiff and the other Joseph Schmidt Production Supervisor did not work well as a team.  Plaintiff asserts that although he was given responsibility for safety, he had been given no authority or resources to make sure that Joseph Schmidt met government safety regulations.  Plaintiff also argues that it is illogical and disingenuous for Hershey to assert that it was transferring a low-performing employee to be the only production supervisor at the Scharffen Berger facility.

Plaintiff's problems continued after he transferred to the Scharffen Berger facility, and again the parties dispute the reasons why.  Plaintiff claims that his principal responsibility was to increase chocolate production, and that during his time at Scharffen Berger he more than doubled chocolate production.  Plaintiff contends that his direct supervisor, Tom Soles, established a confusing and convoluted chain of command and reporting structure at the Scharffen Berger facility, and that although plaintiff was given a number of responsibilities, Soles never instructed the long-term employees and managers at Scharffen Berger of plaintiff's authority.  Plaintiff asserts that many of these long-term employees had been there for years in supervisory roles, and had been demoted after Hershey acquired Scharffen Berger.  Plaintiff also asserts that he was not provided with a desk or telephone of his own

---

[1]  The parties dispute what plaintiff's actual job responsibilities were, including the extent to which plaintiff was responsible for safety issues at the Scharffen Berger plant.  Defendant contends that plaintiff had primary responsibility for safety concerns at the plant, while plaintiff asserts that he was a "partial lead."  These disputes are immaterial to the question addressed in this order, namely whether plaintiff engaged in protected conduct.

at Scharffen Berger, and had to use his personal cellular phone to communicate with Hershey employees, which did not work well in the thick-walled building. Plaintiff also contends that when he tried to change the safety protocols and procedures that had been in place at Scharffen Berger for years prior to Hershey's acquisition, he was met with serious resistance at every level, including from Soles.[2]

Defendant asserts that plaintiff was passive and failed to take a leadership role, and that he consistently did not meet job expectations. Hershey put plaintiff on a Performance Improvement Plan in February 2007, and he was terminated on May 11, 2007. Plaintiff claims that he was terminated in response to his complaints about safety issues at the Scharffen Berger facility, while defendant asserts that plaintiff was terminated for poor job performance.

On January 24, 2008, plaintiff filed a complaint this lawsuit in Alameda County Superior Court, alleging wrongful termination in violation of California Labor Code Sections 1102.5 and 6310(b). Both provisions prohibit an employer from retaliating against employees based upon engaging in protected conduct such as complaining about unsafe working conditions. Defendant removed the case on the basis of diversity jurisdiction, and now moves for summary judgment.

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof

---

[2] Defendant has filed written objections to various portions of plaintiff's deposition testimony. Plaintiff has not filed any response to the objections. None of the deposition testimony at issue is relevant to the question of whether plaintiff engaged in protected activity, and thus the Court need not rule on defendant's objections. Defendant also objects on a number of grounds to the declaration of Jennifer Hute. Ms. Hute states that she is a Certified Safety Professional, and she opines, based upon her review of photographs of the Scharffen Berger facility, that there were a number of safety and health hazards present at that facility. The Court need not rule on the many objections to Ms. Hute's declaration because whether there were, in fact, safety and health hazards at the facility is not evidence that plaintiff engaged in protected activity.

at trial.  The moving party need only point out to the Court that there is an absence of evidence to support the non-moving party's case.  *See id.* at 325.

The burden then shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (U.S. 1986).  "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a motion for summary judgment, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor.  *Id.* at 255.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when she] is ruling on a motion for summary judgment."  *Id.*

**DISCUSSION**

Plaintiff alleges two wrongful termination claims.[3]  The first claim is based on California Labor Code § 1102.5(c), which provides that "An employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation."  Cal. Lab. Code § 1102.5(c).  The second claim is based on California Labor Code § 6310, which prohibits an employer from discharging or otherwise discriminating against an employee for, *inter alia*, making an oral or written complaint to his or her employer about unsafe working conditions or work practices.  *See* Cal. Lab. Code § 6310(a)-(b).  Both of plaintiff's claims are premised on the same factual allegations, namely that Hershey terminated

---

[3]  At the hearing on defendant's motion, plaintiff's counsel argued a new theory that was neither pled in the complaint nor addressed in the summary judgment opposition.  The Court will not consider this new theory.

plaintiff in retaliation for his oral and written complaints to Hershey about safety issues, including violations of Cal-OSHA.

Defendant moves for summary judgment on both claims on numerous grounds. Defendant first contends that plaintiff's claims fail as a matter of law because he did not engage in any protected activity: he did not "refuse to participate in an activity that would result in a violation [or noncompliance with] a state or federal statute or regulation," and he did not make a "complaint" about unsafe working conditions. Defendant contends that the only evidence in the record shows that plaintiff had discussions with his co-workers and supervisors about safety issues at the Scharffen Berger plant, and that none of these discussions rose to the level of a "complaint."

Although the parties disagree about the precise analytical framework for evaluating plaintiff's claims, the parties agree that in order to survive summary judgment, plaintiff must at least raise a triable issue of fact as to whether he engaged in protected conduct under Sections 1102.5(c) and 6310 of the California Labor Code. Plaintiff contends that his "most adamant complaint"[4] and strongest evidence of protected activity is an email dated April 23, 2007 that he sent to Rodrigo Calderon of Human Resources, and cc'd to Jorge Reyes, Tom Soles and Jose Burgos[5] titled "Safety Compliance." That email reads, in its entirety:

> Hi Rodrigo -
> I spoke with Giovannia Reinoso this morning about working inside the molding line while the machine is running
> While she was on vacation I was successful in getting Dora and Reina, the other first shift molding line operators, to lock out the machine when they work inside it
> I also spoke with Steve Bell, the second shift roaster operator about using hearing protection when he is operating the winnower
> In both case[s] my message does not seem to be getting through
> I believe our safety policy requires progressive disciplinary action to gain compliance if it is not forthcoming
> Before I take the hard line approach I want to make sure all fully understand that these safety requirements are mandatory
> Your support in getting this message out would be greatly appreciated
> Thanks - Larry

---

[4] Opposition at 2:9.

[5] At the time of the email, Jorge Reyes was an Associate Environmental & Safety Specialist for Hershey, Tom Soles was plaintiff's direct supervisor, and Jose Burgos was plaintiff's counterpart at the Joseph Schmidt facility.

Bartley Decl., Ex. B (Luchetti Depo., Ex. 20 (HERSHEY000052)).  Tom Soles responded to plaintiff's email as follows:

> I will review on Tuesday . . . the practice so I understand it . . . In every plant I worked in there are instances where you must run the line as part of the job and we just list these risks . . . I need to better understand then I can assist . . . tom

*Id.* Ex. A (Soles Depo., Ex. 115 (HERSHEY000873)).[6]  Mr. Calderon responded to plaintiff's email as follows:

> Larry,
>
> Once the safety requirements for this [sic] tasks are understood by all we can go ahead and proceed with correcting how employees are completing these tasks.  Per Tom's email, let's hold off on disciplining employees until we are all on the same page.
>
> Rodrigo Calderon
> Employee Relations Associate

*Id.* at Ex. B, (Luchetti Depo., Ex. 23 (HERSHEY000053)).

Plaintiff also claims that he orally complained to Soles about safety problems in the spring of 2007.  In support, plaintiff cites the following deposition testimony:

> Q.   Okay, And other than the fact that you sent him this e-mail – these emails about -
>
> A.   We had a –
>
> Q.   – machine guards and that you brought it up at your termination, do you have any facts to support your belief that that is why Mr. Soles terminated you?
>
> A.   We had a – we had a meeting on the floor, and I recall discussing it with him and Giovannia Reinoso.  I can't remember who else was present.  I would say perhaps Jeff was there, the safety committee.  We looked at the piece of equipment in question, and we talked about the things that needed to be done to make it safe.  And he basically said, "Well, I've been in other Hershey plants. That's the way they are," you know.  "So what?"

Luchetti Depo. 208:3-17.

Defendant contends that these communications do not amount to protected activity.  With regard to the April 23, 2007 email, defendant argues that the email simply expresses plaintiff's frustration that

---

[6]  The ellipses are in the original email.

his safety message is not getting through to his subordinates, proposes that employees should be progressively disciplined for failure to heed his safety warnings, and closes with stating "your support in getting this message out would be greatly appreciated." As for plaintiff's evidence of oral complaints during the spring of 2007, defendant contends that this evidence merely shows that plaintiff was discussing safety issues at the Scharffen Berger plant with his co-workers and supervisors, not that plaintiff was complaining about safety violations or objecting to defendant's safety practices.

The Court agrees with defendant that plaintiff has failed to raise a triable issue of fact as to whether he engaged in protected activity, and thus that summary judgment is appropriate.[7] The Court finds *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal.4th 1028 (2005), instructive.[8] In *Yanowitz*, the plaintiff claimed that she was retaliated against in violation of FEHA after she refused to comply with her male supervisor's directive to fire a female subordinate. The plaintiff, Yanowitz, claimed that she believed the directive was discriminatory because the male supervisor had instructed Yanowitz to fire the female subordinate on the basis of her appearance and to replace her with a more attractive female employee. Yanowitz repeatedly asked her male supervisor for "adequate justification" for the dismissal, and when no justification was provided, repeatedly refused to fire the female subordinate. The trial court granted summary judgment in favor of L'Oreal on Yanowitz's retaliation claim, finding that Yanowitz had not engaged in protected conduct because she had never explicitly told her supervisor that she thought the directive was discriminatory.

The California Supreme Court held that "when the circumstances surrounding an employee's conduct are sufficient to establish that an employer knew that an employee's refusal to comply with an

---

[7] The Court recognizes that there are factual disputes as to whether plaintiff was performing his job adequately, and what plaintiff's precise job duties were. However, those factual disputes are not relevant to the question of whether plaintiff engaged in protected activity. Further, the facts about what constitutes plaintiff's "complaints" are not in dispute, and thus whether those communications constitute protected activity is amenable to summary judgment.

[8] Plaintiff argues that cases involving retaliation claims under different statutory schemes such as FEHA are inapposite. The Court disagrees, and finds that although *Yanowitz* addresses a FEHA retaliation claim, the court's discussion provides guidance on evaluating plaintiff's retaliation claims because in both cases a retaliation claim must be based on a plaintiff's protected activity, and the employer's awareness of that protected activity. The fact that a FEHA plaintiff may have engaged in a different type of protected activity than a plaintiff alleging a claim under other sections of the California Labor Code does not fundamentally change the analysis.

United States District Court
For the Northern District of California

order was based on the employee's reasonable belief that the order is discriminatory, an employer may not avoid the reach of the FEHA's antiretaliation provision by relying on the circumstance that the employee did not explicitly inform the employer that she believed the order was discriminatory." *Id.* at 1046. In contrast, "[s]tanding alone, an employee's unarticulated belief that an employer is engaging in discrimination will not suffice to establish protected conduct for the purposes of establishing a prima facie case of retaliation, where there is no evidence the employer knew that the employee's opposition was based upon a reasonable belief that the employer was engaging in discrimination." *Id.*

> Although an employee need not formally file a charge in order to qualify as being engaged in protected opposing activity, such activity must oppose activity the employee reasonably believes constitutes unlawful discrimination, and complaints about personal grievances or vague or conclusory remarks that fail to put an employer on notice as to what conduct it should investigate will not suffice to establish protected conduct.

*Id.* at 1047. The court instructed that on summary judgment, the question is whether a trier of fact properly could find that a defendant knew that the plaintiff was objecting to an illegal or discriminatory act. *Id.* at 1047.[9]

Here, plaintiff has not submitted any evidence showing that he "opposed" any activity by defendant regarding safety or unsafe working conditions. The April 23, 2007 email, which plaintiff contends is his strongest piece of evidence, does not oppose or complain about any policy, practice or decision by defendant. Instead, in that email plaintiff is informing his supervisor and others that several subordinates are not complying with his safety directives, proposes that the employees be disciplined, and requests "support in getting this message out." The deposition testimony cited by plaintiff also does not provide a basis for concluding that plaintiff was refusing to participate in an unlawful activity, or

---

[9] In *Yanowitz*, the court held that summary judgment was improper because the record showed,

Wiswall on multiple occasions directed Yanowitz to fire a sales associate he believed was insufficiently attractive, and on one occasion pointed to an attractive blonde woman while indicating his preference for hiring a sales associate who looked like her. Yanowitz refused to implement Wiswall's directive and repeatedly asked for "adequate justification" for that order. There is no evidence in the record that Wiswall ever asked Yanowitz to explain her numerous requests for "adequate justification," and L'Oreal failed to present any evidence regarding Wiswall's understanding or knowledge of Yanowitz's reasons for refusing to follow his directive or for demanding "adequate justification" for that directive.

*Id.* at 1048.

otherwise complaining about unsafe working conditions.  Instead, the evidence simply shows that plaintiff was communicating with his supervisors and co-workers about how best to address safety issues at the Scharffen Berger plant, a matter that plaintiff admits was within his job duties.[10]

The Court agrees with plaintiff that a complaint need not be labeled a "complaint" in order to constitute protected activity.  The Court also agrees with plaintiff that a complaint can be made internally to an employer, and need not have been made to a governmental agency in order to qualify as protected activity.  However, these arguments do not address the underlying problem with plaintiff's *evidence*: the actual communications before the Court do not "oppose activity the employee reasonably believes constitutes unlawful [or unsafe conditions]" and instead fall in the inactionable category of "vague or conclusory remarks that fail to put an employer on notice as to what conduct it should investigate." *Yanowitz*, 36 Cal. 4th at 1047; *see also McKenzie v. Renberg's Inc.*, 94 F.3d 1478, 1486-1487 (10th Cir. 1996) ("In order to engage in protected activity . . . the employee must step outside his or her role of representing the company and either file (or threaten to file) an action adverse to the employer, actively assist other employees in asserting FLSA rights, or otherwise engage in activities that reasonably could be perceived as directed towards the assertion of rights protected by the FLSA."). The Court emphasizes the narrowness of this ruling: the Court does not conclude that plaintiff did not engage in any protected activity because plaintiff's job responsibilities included safety matters.  Instead, the problem with plaintiff's claim is that his communications did not amount to opposing an unlawful or unsafe condition or taking a position adverse to the company –  there simply was no protected conduct.[11]

---

[10]   The parties' dispute about how much of plaintiff's job duties involved safety issues is immaterial because both parties agree that plaintiff was responsible, at least in part, for safety matters.

[11]   Compare, for example, *Frazier v. United Parcel Service, Inc.,* 2005 U.S. Dist. LEXIS 13894, at *36 (E.D. Cal. May 3, 2005):  "Frazier [plaintiff] admits that one of his job duties was to perform safety inspections on his vehicle and identify potential safety problems.  UPS argues that Frazier, like the plaintiff in *McKenzie [v. Renberg's Inc.*, 94 F.3d 1478 (10th Cir. 1996)], was merely doing his job, not engaging in protected conduct. But Frazier did assert a right adverse to the company – he refused to obey an order because he was concerned about the safety of his vehicle.  Frazier engaged in protected conduct."

Accordingly, the Court concludes that plaintiff has not raised a triable issue on the question of whether he engaged in protected activity, and therefore GRANTS defendant's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion for summary judgment. (Docket No. 54).

**IT IS SO ORDERED.**

Dated: September 9, 2009

_____
SUSAN ILLSTON
United States District Judge

**United States District Court**
For the Northern District of California

10